UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nos 16-CV-74 (JFB), 16-CV-415 (JFB),
16-CV-1475 (JFB), 16-CV-1476 (JFB)
_____

MAURA E. LYNCH,

Appellant,

VERSUS

STEPHEN S. VACCARO, ET AL.,

Appellees.
_____

PATRICIA M. FRANK,

Appellant,

VERSUS

MAURA E. LYNCH, ET AL.,

Appellees.
_____

**MEMORANDUM AND ORDER**
March 28, 2017
_____

JOSEPH F. BIANCO, District Judge:

The instant case is a consolidated set of four appeals from orders by the Honorable Alan S. Trust, United States Bankruptcy Judge, in a voluntary Chapter 11 bankruptcy proceeding (the "Bankruptcy Proceeding") initiated by Maura E. Lynch ("Lynch"). The appeals' lengthy factual and procedural history stems from a divorce action in New York State court filed by Stephen S. Vaccaro ("Vaccaro"), Lynch's former husband (the "Divorce Action"). During the course of the Divorce Action, the state court ordered equitable distribution of certain marital properties, including a property at 43 Harbor Drive, Sag Harbor, New York ("Harbor Drive"), which was the subject of

the bankruptcy orders at issue here.[1] After determining that Lynch had failed to comply with its equitable distribution order and had mismanaged Harbor Drive, the state court appointed Vaccaro as Receiver and directed that the property be sold and the proceeds be equally divided.

The state court subsequently found Lynch in contempt and eventually replaced Vaccaro as Receiver with Stephen L. O'Brien ("O'Brien"). O'Brien then proceeded with the sale of Harbor Drive, and the state court authorized him to effect a contract of sale entered into by Vaccaro and Patricia M. Frank ("Frank") while Vaccaro was still the court-appointed Receiver.

However, before Frank could close on her purchase of Harbor Drive, Lynch filed a voluntary Chapter 11 bankruptcy petition on November 9, 2015. Thereafter, Vaccaro filed a motion, as amended on November 30, 2015, in the Bankruptcy Court seeking an order excusing O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code, 11 U.S.C. §§ 543(a)-(b), in order to allow O'Brien to retain custody of Harbor Drive rather than delivering possession to Lynch as the debtor in the Bankruptcy Proceeding (the "Excusal Motion"). O'Brien subsequently joined the Excusal Motion, and after briefing and a December 10, 2015 evidentiary hearing, the Bankruptcy Court entered an order on December 22, 2015 (the "Excusal Order") that, among other things, directed that (1) O'Brien would continue in possession of Harbor Drive, and (2) Harbor Drive would be marketed and sold at auction pursuant to procedures established in a separate order. That decision is the subject of the first appeal in this consolidated action, No. 16-CV-74 (JFB), in which Lynch, as appellant, seeks reversal of the Excusal Order (the "Lynch Appeal").

In addition, Frank has filed appeals in Nos. 16-CV-415 (JFB), 16-CV-1475 (JFB), and 16-CV-1476 (JFB) challenging three orders by the Bankruptcy Court concerning the sale of Harbor Drive (the "Frank Appeals"). As noted, Lynch contracted with Vaccaro on or about April 8, 2014 to purchase Harbor Drive for $1,325,000 (the "Contract"). After Lynch filed her bankruptcy petition, Frank moved on November 17, 2015 for an order by the Bankruptcy Court (1) lifting the automatic stay of sale triggered by the petition; (2) directing O'Brien to sell Harbor Drive to Lynch pursuant to the Contract; and (3) staying a separate eviction proceeding commenced by Lynch against Frank in New York State court (the "Stay Motion"). However, at the December 10, 2015 evidentiary hearing, the Bankruptcy Court directed sale of Harbor Drive through an auction process, and Frank then tendered a new offer of $1,425,000 for Harbor Drive (the "New Offer"). In a December 22, 2015 order (the "Auction Order") accompanying the Excusal Order, the Bankruptcy Court established procedures for the auction of Harbor Drive and determined that the New Offer by Frank would be treated as a "stalking-horse" bid.

On January 12, 2016, the Bankruptcy Court formally denied Frank's November 17, 2015 motion (the "Stay Order"), which is the basis of the appeal in No. 16-CV-415 (JFB). On February 18, 2016, Frank moved

---

[1] Although the Bankruptcy Proceeding implicates other marital properties, the orders on appeal only address Harbor Drive. Accordingly, the Court limits its discussion and analysis to Harbor Drive in this Memorandum and Order.

2

for reconsideration of both the Auction Order and the Stay Order, which the Bankruptcy Court denied on March 10, 2016 (the "Reconsideration Order"). Frank appeals the Reconsideration Order in No. 16-CV-1475 (JFB). In the interim, Frank successfully tendered a winning bid of $1,865,000 (the "Purchase Price") for Harbor Drive at the February 22, 2016 auction, and following two evidentiary hearings, the Bankruptcy Court ordered on March 18, 2016 that Harbor Drive be sold to Frank at the Purchase Price (the "Sale Order"). Frank then moved to stay the Sale Order pending appeal, which the Bankruptcy Court denied on March 24, 2016. The Sale Order is the subject of the final appeal in this action, No. 16-CV-1476 (JFB).

In the Frank Appeals, Frank seeks (1) reversal of the Stay, Reconsideration, and Sale Orders; and (2) repayment of the differential between the Contract price and the Purchase Price for Harbor Drive, *i.e.*, $540,000.

\*\*\*

For the reasons set forth below, the Court concludes that the Lynch Appeal and the Frank Appeals are moot pursuant to Section 363(m) of the Bankruptcy Code, 11 U.S.C. § 363(m), and therefore dismisses this consolidated action in its entirety.

I. BACKGROUND

The Court assumes the parties' familiarity with the full facts and procedural history underlying this action and summarizes the facts and history relevant to the instant appeals based on the Consolidated Bankruptcy Record on Appeal. ("R.," No. 16-CV-1476, ECF No. 5.)

A. The Divorce Action

In 2010, Vaccaro commenced the Divorce Action—*Vaccaro v. Lynch,* Index No. 38437-10—in New York Supreme Court, County of Suffolk (the "State Court"). (R. at 214.) Following a nine-day trial, the State Court entered an order on December 12, 2012, as amended on March 15, 2013, directing, *inter alia*, equitable distribution of the parties' assets. (*Id.* at 728-55.) The State Court ordered that Vaccaro and Lynch cooperate to sell Harbor Drive and evenly divide the proceeds between them following the satisfaction of any outstanding mortgages, liens, and judgments. (*Id.* at 753-54.) In addition, the State Court declined to appoint a Receiver at that time to manage the sale of Harbor Drive, but said that it would do so if Vaccaro and Lynch could not work together, or if one of them thwarted the sale of the property. (*Id.* at 755.)

On May 3, 2013, following a motion by Vaccaro, the State Court appointed Vaccaro as Receiver for Harbor Drive based on Lynch's failure to vacate Harbor Drive and cooperate in the sale of that property. (*Id.* at 757-59.) It directed Lynch to leave Harbor Drive by June 30, 2013 and to make the property presentable for real estate showings. (*Id.*) The State Court entered a final judgment in the Divorce Action on July 16, 2013, as amended on December 23, 2013, which reiterated that Harbor Drive was to be equitably distributed. (*Id.* at 761-73.)

The State Court found Lynch in contempt on November 26, 2013 for, *inter alia*, obstructing the sale of Harbor Drive (*id.* at 775-80), and on April 1, 2015, it replaced Vaccaro with O'Brien as Receiver (*id.* at 782-87.) The State Court directed

3

O'Brien to prevent waste or mismanagement of Harbor Drive and to dispose of it in accordance with its prior order. (*Id*. at 785.) However, on Lynch's motion, the New York Appellate Division, Second Department issued an order on March 27, 2015 directing Vaccaro to show cause as to why the sale of Harbor Drive should not be stayed pending Lynch's appeal of various State Court orders, and the State Court accordingly stayed its April 1, 2015 order on April 14, 2015. (*Id*. at 807.) Subsequently, on May 15, 2015, the Second Department denied Lynch's request for a stay of sale, and by order dated August 25, 2015, the State Court vacated its April 14, 2015 order, thereby allowing the sale of Harbor Drive to move forward. (*Id*. at 809.)

Further, on September 24, 2015, the State Court authorized O'Brien to retain counsel and a broker to sell Harbor Drive in accordance with the Contract between Frank and Vaccaro, which had been entered into by Vaccaro during the period when he served as Receiver. (*Id*. at 789-91.) The Contract, dated April 8, 2014, listed a purchase price of $1,325,000 by Frank for Harbor Drive (*id*. at 825-38), and the State Court approved a sale of the property for that price in its September 24, 2015 order (*id*. at 791).

B. The Bankruptcy Proceeding

Before Frank closed on Harbor Drive, Lynch filed her voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 9, 2015. (*Id*. at 10.) On November 17, 2015, Frank filed the Stay Motion for an order pursuant to 11 U.S.C. § 362(d) terminating the automatic stay triggered by Lynch's petition in order to allow Frank to proceed with the purchase. (*Id*. at 10-17.) Frank also asked the Bankruptcy Court to stay an ancillary eviction proceeding initiated by Lynch against Frank in the Justice Court of the Town of Southampton. (*Id*. at 16.)

Subsequently, on November 23, 2015, Vaccaro filed the Excusal Motion, as amended on November 30, 2015, seeking an order pursuant to 11 U.S.C. § 543(d) excusing O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code that would allow O'Brien to retain possession of Harbor Drive, rather than delivering the property to Lynch as the debtor in the Bankruptcy Proceeding. (*Id*. at 165-72, 183-94.) O'Brien joined the Excusal Motion on December 2, 2015. (*Id*. at 219-23.)

1. The December 10, 2015 Evidentiary Hearing

After the Stay and Excusal Motions were fully briefed, the Bankruptcy Court held an evidentiary hearing on December 10, 2015. (*Id*. at 573-673.) Vaccaro, Lynch, Frank, and O'Brien were all represented by counsel at that hearing, and O'Brien testified. (*Id*.) After reviewing evidence submitted by the parties and hearing argument from counsel, the Bankruptcy Court orally granted the Excusal Motion in part and denied the Stay Motion in its entirety at the conclusion of the hearing after first affording the parties time to privately "work out a mechanism by which the value of that property [Harbor Drive] can be quickly maximized for the benefit of creditors." (*Id*. at 654.) With respect to the Excusal Motion, the Bankruptcy Court found, after applying the factors set forth by Judge Spatt in *In re Dill*, 163 B.R. 221 (E.D.N.Y. 1994), that excusal was warranted because Lynch

4

ha[d] no viable plan that [was] in the best interest of [Harbor Drive]. She ha[d] no tenant. She ha[d] no right to rent the property. She ha[d] no buyer and no realistic plan to maximize the value of the property. The debtor [Lynch] would argue that she's only had a month in bankruptcy to attempt to come up with such a plan, but the 43 Harbor property ha[d] been the subject of sale orders by the [S]tate [C]ourt for almost three years.

(*Id*. at 661.) In addition, the Bankruptcy Court highlighted Lynch's failure to pay pre-petition liens on Harbor Drive (*id*. at 662), and it therefore "infer[red] and [found] based upon the debtor's pre-petition conduct that she ha[d] mismanaged the 43 Harbor property by refusing to abide by the lawful orders of the [S]tate [C]ourt for a protracted period of time . . ." (*id*. at 663). Accordingly, the Bankruptcy Court excused O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code in order to allow him to retain possession of Harbor Drive pending sale. (*Id*. at 664-65.)

As to the disposition of that property and Frank's Stay Motion, the Bankruptcy Court expressed "concerns about whether or not 43 Harbor is now worth more than the Frank contract price" (*id*. at 661) and determined that it was in the best interests of creditors to "implement a sale process to ascertain and obtain the highest and best value for an asset of the estate" (*id*. at 665). The Bankruptcy Court said that it would "enter an order authorizing [O'Brien] to proceed on [an 11 U.S.C. §] 363(b) process before this Court to ascertain the highest and best value for the 43 Harbor property." (*Id*. at 666.) The Bankruptcy Court also said that it was "appropriate in this setting to treat the Franks as a stalking horse purchaser for the property and to provide to them certain bid protections in the event of an ultimate auction sale of the property," and that there would "only be an auction if someone offer[ed] [O'Brien] more money than the Franks did." (*Id*. at 668-69.)[2] Finally, the Bankruptcy Court refused to enjoin the eviction proceeding initiated by Lynch against Frank in state court due to limitations on the Bankruptcy Court's "jurisdiction to restrain the lawful processes of a sister court." (*Id*. at 667.)

2. The Excusal and Auction Orders

On December 22, 2015, the Bankruptcy Court entered the Excusal Order, which stated that "pursuant to Section 543(d) of the Bankruptcy Code, Stephen L. O'Brien ('the Receiver') is excused from complying with Sections 543(a) and (b) of the Bankruptcy Code with respect to the parcel of real property known as 43 Harbor Drive, Sag Harbor, New York (the 'Harbor Drive Property')"; "the Receiver shall continue in possession of the Harbor Drive Property"; and "the Harbor Drive Property shall be marketed and sold by the Receiver pursuant to procedures that will be issued by this Court in a separate order." (*Id*. at 553-54.) The Excusal Order also mentioned additional marital properties that were the subject of the Excusal Motion, but it deferred resolution of the relief requested by Vaccaro and O'Brien as to those properties to a later date. (*Id*. at 554.)

---

[2] During oral argument on the Stay Motion, the Bankruptcy Court also expressed its view, without explanation, that the Contract had "expired." (*Id*. at 623.)

5

On that same day, the Bankruptcy Court issued the Auction Order, which stated that it was "in the best interests of [Lynch's] bankruptcy estate, its creditors and other parties-in-interest, for" Harbor Drive to be sold by O'Brien pursuant to auction procedures annexed to the Auction Order. (*Id*. at 555-57.) The Auction Order also stated that "Frank, who signed a contract to purchase the Harbor Drive Property for $1,325,000.00 has agreed to increase her offer to $1,425,000.00 and shall be deemed a stalking horse bidder and a Qualified Bidder." (*Id*. at 556.)

3. The Stay and Reconsideration Orders

On January 12, 2016, the Bankruptcy Court issued the Stay Order denying Frank's Stay Motion. (*Id*. at 687-88.) The Bankruptcy Court said that, based on its findings at the December 10, 2015 hearing, it had concluded that "neither relief from the automatic stay nor a stay of the eviction proceedings should not [sic] be granted." (*Id*. at 687.) Subsequently, on February 18, 2016, Frank moved for reconsideration of the Stay and Auction Orders. (*Id*. at 1221-35.) Frank argued that the Bankruptcy Court (1) failed to correctly apply New York law by *sua sponte* determining that the Contract had "expired"; (2) deprived Frank of Due Process by refusing to give effect to the Contract; and (3) improperly denied Frank of the protections of 11 U.S.C. § 365(i), which would allow her, as the purchaser in possession of Harbor Drive, to enforce the Contract. (*Id*. at 1221-34.) In the alternative, Frank asked the Bankruptcy Court to stay the auction and sale of Harbor Drive pending appeal. (*Id*. at 1234-35.)

At a hearing on March 9, 2016, the Bankruptcy Court orally denied Frank's motion for reconsideration. (Tr. of March 9, 2016 Hr'g, No. 16-CV-1476 (JFB), ECF No. 5-11.) The Bankruptcy Court determined that reconsideration of the Stay Order was unwarranted because (1) Frank's motion was untimely since it was filed more than 14 days after entry of the Stay Order; and (2) the Bankruptcy Court did not make any mistake of law or fact in denying the Stay Motion. (*Id*. at 91-92.) The Bankruptcy Court held that the "Bankruptcy Code clearly supervenes State Court receivership orders, and this Court has statutory authority under Section 543 to excuse or condition the receiver's noncompliance with Sections 362, 542, and 543 with respect to bankruptcy of the estate which is precisely what this Court did in the receiver order entered on December 22nd." (*Id*. at 92.) With respect to the Auction Order, the Bankruptcy Court found no grounds for reconsideration because that decision was interlocutory, rather than final, and there was no intervening change in the controlling law, new evidence, or manifest injustice. (*Id*. at 93-94.)

Finally, the Bankruptcy Court declined Frank's request for a stay of sale pending appeal because (1) as discussed further below, there was no possibility that Frank would lose Harbor Drive to another bidder since she had successfully placed the winning bid for that property; (2) the bankruptcy estate would not suffer injury absent a stay, and would in fact be harmed if a stay eventually permitted Frank to buy Harbor Drive for the Contract price, rather than the higher Purchase Price; and (3) Frank failed to demonstrate a likelihood of success on appeal because (a) neither the Stay Order nor the Auction Order in fact negated the Contract, and (b) Frank failed to demonstrate entitlement to the protections of

6

11 U.S.C. § 365(i) because that provision is limited to contracts of sale made by the debtor, and Lynch was not a party to the Contract. (*Id.* at 94-99.) On March 10, 2016, the Bankruptcy Court issued the Reconsideration Order denying Frank's motion for reconsideration of the Stay and Auction Orders. (R. at 1799.)

4. The Sale Order

An auction was held for Harbor Drive on February 22, 2016, and Frank was the winning bidder with the Purchase Price of $1,865,000.00. (*Id.* at 1724.) The Bankruptcy Court then held evidentiary hearings on February 24, 2016 and March 9, 2016 to determine whether to approve the sale of Harbor Drive to Frank. (*Id.* at 1567-1676; Tr. of March 9, 2016 Hr'g.) The parties submitted briefs on that issue, and the Bankruptcy Court specifically considered Lynch's contention that Frank and O'Brien had acted in bad faith during the auction process. (*See, e.g.*, Tr. of March 9, 2016 Hr'g at 99-100.) After hearing testimony and reviewing evidence, the Bankruptcy Court stated the following at the conclusion of the March 9, 2016 hearing:

> This Court expressed significant concern at the close of the prior hearing [on February 24, 2016] or at the adjournment point of the prior hearing with allegations of taint in the sale process.
>
> As the parties are well aware, a bankruptcy sale process must be open. It must be clear. It must be clean. It must be vigorous. There are no side deals. There are no secrets, and a[n] auction process in a bankruptcy case that is tainted raises substantial considerations for the Court, and this Court is taking gravely seriously the allegations of taint, interference, and intimidation.
>
> The Court's conclusion from the testimony and admissible evidence though is that . . . there's no actual evidence before this Court of taint, interference, or intimidation.
>
> While [an 11 U.S.C. §] 363 sale process is usually not perfect, there were no irregularities in this sale process. There were no violations of the Court's bid procedures . . . .
>
> So the Court does conclude that there has been no taint in the sale process and no violation of the Court's bid procedures.

(*Id.*) Accordingly, the Bankruptcy Court found that approving the sale of Harbor Drive to Frank for the Purchase Price was "in the best interest of the bankruptcy estate and . . . without any doubt maximized the value of this asset to this estate." (*Id.* at 101.)

On March 18, 2016, the Court issued the Sale Order, which stated, *inter alia*, that

> the Court does not find that [Lynch] has proven either that Frank interfered with the auction process or that [O'Brien] failed to comply with the [Auction] Order; instead, the Court finds that the Harbor Drive Property was properly exposed to the market place through a vigorous marketing and auction process, and the bids obtained exceed the value ascribed to the property by [Lynch]

and equals or in fact exceeds the fair market value of the property.

(*Id*. at 1724-28.) The Sale Order also authorized O'Brien to sell Harbor Drive to Frank for the Purchase Price, and the Bankruptcy Court ordered that "in the event that the Purchaser consummates the closing of the sale of the Harbor Drive Property while an appeal of this Order is pending, the Purchaser shall be entitled to rely upon the protection of § 363(m) of the Bankruptcy Code, absent any stay pending appeal . . . ." (*Id*.)

Thereafter, Frank moved on March 21, 2016 for a stay of the Sale Order pending appeal (*id*. at 1729-51), which the Bankruptcy Court denied by order dated March 24, 2016 (*id*. at 1800). In accordance with the Sale Order, O'Brien and Frank closed on the purchase of Harbor Drive on March 24, 2016, and the property deed was transferred to Frank. (*Id*. at 1801.)

C. The Instant Appeals

Lynch filed Notice of Appeal of the Excusal Order on January 7, 2016, and Frank appealed the Stay Order on January 25, 2016 and the Reconsideration and Sale Orders on March 24, 2016. This Court consolidated the Lynch Appeal and the Frank Appeals by order dated May 10, 2016.

Lynch filed her brief in the Lynch Appeal on July 15, 2015, and Vaccaro and Frank filed opposition briefs on September 27, 2016. Lynch then submitted her reply on October 24, 2016.

With respect to the Frank Appeals, the parties filed a single set of briefs in all three actions. Frank filed an amended opening brief on August 29, 2016, and Lynch submitted her opposition on September 27, 2016, which Vaccaro joined in part that same day. Frank filed her reply on October 24, 2016. O'Brien did not submit or join any briefs in either the Lynch or Frank Appeals.

The Court has fully considered the parties' submissions, as well as the voluminous Consolidated Bankruptcy Record on Appeal.

II. STANDARD OF REVIEW

28 U.S.C. § 158(a) vests this Court with appellate jurisdiction to review final orders of the Bankruptcy Court. The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007); *see also In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law de novo, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion.").

"The approval of a sale of assets under section 363 of the Bankruptcy Code is generally reviewed for abuse of discretion." *23 Jefferson St. LLC v. 636 Assets, Inc.*, No. 14-CV-7150 CBA, 2015 WL 5037343, at *3 (E.D.N.Y. Aug. 25, 2015) (citing *In re Motors Liquidation Co.*, 428 B.R. 43, 51 (S.D.N.Y. 2010)). "A bankruptcy court abuses its discretion when it arrives at '(i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly

erroneous factual finding, cannot be located within the range of permissible decisions.'" *Motors Liquidation*, 428 B.R. at 51-52 (quoting *Schwartz v. Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003)).

### III. DISCUSSION

In the Lynch Appeal, Lynch argues that reversal of the Excusal Order is warranted because the Bankruptcy Court "committed clear error and/or abused its discretion when it determined, without any evidence before it, that Lynch mismanaged" Harbor Drive. (Lynch Appellant Br. at 15.) Lynch also claims that the various "State Court orders [in the Divorce Action] violated the Appellate Division's stay and Lynch's Due Process rights [and] improperly influenced the Bankruptcy Court's decision." (*Id*. at 16.) She thus contends that the Bankruptcy Court should not have credited the State Court's findings as a basis for excusing O'Brien's compliance with Sections 543(a) and (b) of the Bankruptcy Code because they were unlawful. (*Id*. at 16-17.)

Vaccaro argues in opposition that (1) the Lynch Appeal is constitutionally moot because the sale of Harbor Drive is a *fait accompli*; (2) the Bankruptcy Court correctly determined that excusal was in the best interests of the bankruptcy estate's creditors; and (3) the *Rooker-Feldman* doctrine bars federal review of the State Court orders. Frank joins the *Rooker-Feldman* argument in her opposition brief and also avers that (1) Lynch has no right under New York State law to appeal the May 11, 2013 State Court order appointing Vaccaro as Receiver; (2) the Lynch Appeal is moot under Section 363(m) of the Bankruptcy Code; and (3) the Excusal Order was interlocutory and therefore not appealable as of right.

With respect to the Frank Appeals, Frank contends that reversal of the Stay, Reconsideration, and Sale Orders is required because the Bankruptcy Court violated Frank's Due Process rights and denied her the protections of Section 365(i) of the Bankruptcy Code by issuing the Auction and Sale Orders despite Frank's pre-existing equitable interest in Harbor Drive based on the Contract. Specifically, Frank argues that the Bankruptcy Court wrongly determined that the Contract had "expired" and did not afford her an opportunity to be heard prior to directing the sale of Harbor Drive at auction pursuant to 11 U.S.C. § 363. Finally, Frank asserts that the Bankruptcy Court violated the *Rooker-Feldman* doctrine by disregarding the State Court's September 24, 2015 order approving the sale of Harbor Drive to Frank for the Contract price.

In her opposition brief, Lynch contends that (1) Frank waived her right to appeal the Bankruptcy Court's order by participating in the auction of Harbor Drive; (2) the Contract did not grant Frank any enforceable interests with respect to that property; and (3) to the extent that Frank seeks to challenge the Excusal and/or Auction Orders, that challenge is procedurally defective because Frank failed to appeal from those decisions. Vaccaro joins the first and third of Lynch's arguments in his opposition.

For the reasons set forth below, the Court concludes that this consolidated action is moot under Section 363(m) of the Bankruptcy Code and that, consequently, there is no appellate jurisdiction. Accordingly, the Court dismisses the Lynch and Frank Appeals in their entirety.

9

A. Applicable Law

Section 363(m) of the Bankruptcy Code provides that the

> reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

In *In re WestPoint Stevens, Inc.*, 600 F.3d 231 (2d Cir. 2010), the Second Circuit explained that this provision "creates a rule of 'statutory mootness,' which bars appellate review of any sale authorized by 11 U.S.C. § 363(b) or (c) so long as the sale was made to a good-faith purchaser and was not stayed pending appeal." *Id*. at 247 (citations omitted). Moreover, "[b]y restricting the exceptions to the application of section 363(m) to an entry of a stay or a challenge to the 'good faith' aspect of the sale, section 363(m) moots a broader range of cases than are barred under traditional doctrines of mootness." *Id.* (citing *Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 742 (6th Cir. 2005) ("Even if the appeal is not moot as a constitutional matter because a court could provide a remedy, . . . § 363(m) requires that certain appeals nonetheless be treated as moot absent a stay.")). Thus, the Second Circuit has "held in no ambiguous terms that section 363(m) is a limit on [a reviewing court's] jurisdiction and that, absent an entry of a stay of the Sale Order, [courts] only retain authority to review challenges to the 'good faith' aspect of the sale." *Id*. at 248; *see also In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997) ("*Gucci I*") ("[R]egardless of the merit of an appellant's challenge to a sale order, we may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted.").

Moreover, because of "the uniquely important interest in assuring the finality of a sale that is completed pursuant to 11 U.S.C. § 363(b) or (c) in bankruptcy proceedings," appellate courts lack jurisdiction under Section 363(m) "to review the entire Sale Order—not just the actual sale transaction." *WestPoint*, 600 F.3d at 248 (footnote omitted) (citing *In re Parker*, 499 F.3d 616, 620 (6th Cir. 2007) ("[W]e begin by dispelling any notion that we sit in review of the bankruptcy court's Order of Sale. Defendant's attempts to assail the validity of the bankruptcy court's Order of Sale, however indirectly, are statutorily moot.")); *see also In re Rare Earth Minerals*, 445 F.3d 359, 363 (4th Cir. 2006) ("Section 363(m) codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved.")

Thus, the Second Circuit highlighted in *WestPoint* the danger of opening the door to collateral attacks on bankruptcy sale orders, even if the challenge is not to the sale itself, but rather to some other provision or procedure pertaining to the sale. It cautioned that permitting appellate review would, *inter alia*, enable "a purchaser [to] demand a discount for the purchase of assets in which the terms and conditions of the sale cannot be protected from challenge even

10

after closing the sale." 600 F.3d at 248-49 (citing *In re Trism, Inc.*, 328 F.3d 1003, 1007 (8th Cir. 2003) ("[A] challenge to a related provision of an order authorizing the sale of the debtor's assets affects the validity of the sale [and therefore falls under section 363(m)] when the related provision is integral to the sale of the estate's assets.")). In addition, courts in this Circuit and other Courts of Appeal have correctly held that "section 363(m)'s strict limitation of issues on appeal of an unstayed sale order does not distinguish between jurisdictional and non-jurisdictional challenges [to the Sale Order]." *Motors Liquidation*, 428 B.R. at 54 (collecting cases).

This "strictly enforce[d]" rule "applies even when a stay was denied by the district court after a motion for a stay *was* timely made because statutory mootness recognizes that a reviewing court 'may be powerless to undo or rewrite the terms of the consummated sale.'" *Id.* at 53 (quoting *Gucci I*, 105 F.3d at 840). Thus, a failure to seek or obtain a stay pending appeal of a bankruptcy sale order from either a bankruptcy court or a district court divests a district court of jurisdiction to review any aspect of the sale order, except for whether the purchaser acted in good faith. *See id.* at 54; *WestPoint*, 600 F.3d at 248; *In re MSR Resort Golf Course LLC*, No. 13 CIV. 2448 KPF, 2014 WL 67364, at *10 (S.D.N.Y. Jan. 7, 2014) ("Because § 363(m) applies and because the relief the Appellant seeks would affect the validity of the sale, the Court has jurisdiction to hear a single argument: whether the Purchaser qualified as a good faith purchaser for § 363(m) purposes.").

B. Analysis

Notwithstanding the parties' plethora of submissions and the lengthy history of this consolidated action, it is clear to this Court that Section 363(m) and Second Circuit precedent preclude appellate review of any aspect of the Excusal, Auction, Reconsideration, or Sale Orders, except for whether Frank purchased Harbor Drive in good faith. Because the Bankruptcy Court conducted extensive factual findings on that issue, and this Court does not find any evidence of error—much less clear error— by the Bankruptcy Court, the Lynch and Frank Appeals are statutorily moot and must be dismissed. *See, e.g.*, *MSR Resort*, 2014 WL 67364, at *10 (holding that the appeal was moot because the "Bankruptcy Court concluded that" the purchaser acted in good faith "and this conclusion was not clear error").

1. The Lynch Appeal

Although Lynch appeals the Excusal Order, rather than the Sale Order, that is a distinction without a difference under *WestPoint*, which made plain that Section 363(m) bars review of not just bankruptcy sale orders, but also other provisions that are "integral" to the sale. *WestPoint*, 600 F.3d at 248. In that case, the Second Circuit found that the statutory mootness rule applied to lien release, claim satisfaction, and distribution provisions in a sale order because without them, "there simply could not be a sale." *Id.* at 250 (citing *In re Stadium Mgmt. Corp.*, 895 F.2d 845, 849 (1st Cir. 1990) (concluding that a certain condition of the sale was "integral to the sale and removing it from the sale would have adversely affected the terms of the sale")). Likewise, the Excusal Order was a necessary precursor to the sale of Harbor Drive because, among other things, it directed "that the Harbor Drive Property

shall be marketed and sold by [O'Brien] pursuant to procedures that will be issued by this Court in a separate order." (R. at 554.) Further, reversal of the Excusal Order would result in delivering possession of Harbor Drive to Lynch as the debtor in the Bankruptcy Proceeding pursuant to 11 U.S.C. § 543, thereby negating the sale of that property to Frank. Accordingly, Section 363(m) applies to that decision.

Because there is no dispute that Lynch did not seek, much less obtain, a stay of the Excusal Order from either this Court or the Bankruptcy Court, this Court's jurisdiction is limited to reviewing her challenge to the "good faith" aspect of the sale. *WestPoint*, 600 F.3d at 248. "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) ("*Gucci II*") (citations omitted). "Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *Id*. Moreover, a "purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id*. However, "the purchaser's participation in the bankruptcy or its knowledge of a pending appeal [does not] imply bad faith." *23 Jefferson St. LLC v. 636 Assets, Inc.*, No. 14-CV-7150 CBA, 2015 WL 5037343, at *4 (E.D.N.Y. Aug. 25, 2015) (citing 11 U.S.C. § 363(m); *In re Ewell*, 958 F.2d 276, 280 (9th Cir. 1992) ("We have applied the mootness rule whether or not the purchaser is a party to the appeal or the purchaser has taken irreversible steps following the sale.")).

Here, Lynch advances the same argument that she asserted before the Bankruptcy Court: that "during the sale and bidding process [for Harbor Drive], Frank actively interfered with the processes in an effort to affect the outcome of the bid" by impeding "the marketing and showing of [Harbor Drive] in an effort to discourage bidders, and at the auction tried to persuade the next highest bidder, the Gilbert family, to refrain from participating in the bid." (Lynch Reply Br. at 3-4.) However, where, as here, "the bankruptcy court determines that the buyer purchased in good faith, the appeal is moot unless appellants can establish that such a finding is clearly erroneous." *23 Jefferson St.*, 2015 WL 5037343, at *4 (citing *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.*, 610 F.3d 44, 51-52 (2d Cir. 2010)). Upon review of the record—including the transcripts of the February 24 and March 9, 2016 hearings where the Bankruptcy Court reviewed evidence and testimony regarding Frank's conduct during the auction of Harbor Drive—this Court is "not left with 'the definite and firm conviction that a mistake [w]as . . . committed'" by the Bankruptcy Court in its finding of good faith, as set forth in its March 9, 2016 oral ruling and the Sale Order. *Dist. Lodge 26*, 610 F.3d at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).[3]

---

[3] In addition to being statutorily moot, the Lynch Appeal is also equitably moot. "[A]n appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012). The Second Circuit has held that the

> presumption of equitable mootness can be overcome, however, if . . . (1) 'the court can

Accordingly, because (1) the Excusal Order was an integral part of the sale of Harbor Drive; (2) Lynch did not obtain a stay of the Excusal Order; and (3) the Bankruptcy Court did not commit clear error in determining that Frank was a good-faith purchaser of Harbor Drive, the Lynch Appeal is moot under Section 363(m) of the Bankruptcy Code and must be dismissed.[4]

### 2. The Frank Appeals

The same statutory mootness argument that Frank advances in opposition to the Lynch Appeal is fatal to her own appeals. Like the Excusal Order, the Stay and Reconsideration Orders were both integral to the sale of Harbor Drive because they were necessary precursors to Frank's eventual purchase of that property at auction, and the Sale Order clearly falls within the ambit of Section 363(m) because it approved a sale pursuant to 11 U.S.C. § 363(b). (R. at 1726.) In other words, reversal of the Stay Order or the Reconsideration Order—which also denied reversal of the Auction Order—would necessarily undo the sale of Harbor Drive, and thus, Section 363(m) applies. *See WestPoint*, 600 F.3d at 248-51 (holding that that statutory mootness covered contested provisions that were necessary to transfer

---

still order some effective relief'; (2) 'such relief will not affect the re-emergence of the debtor as a revitalized corporate entity'; (3) 'such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court'; (4) 'the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings'; and (5) 'the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.'

*Id*. (quoting *In re Chateaugay Corp.*, 10 F.3d 944, 952-53 (2d Cir. 1993)).

Since substantial consummation is not in dispute here because the Bankruptcy Court approved the sale of Harbor Drive and Frank has obtained title to the property, Lynch "must satisfy all five of the above requirements to defeat the presumption of mootness." *MSR Resort*, 2014 WL 67364, at *11. However, she cannot do so because, at a minimum, she failed to seek a stay of the Excusal Order and thus cannot satisfy the fifth factor. *See In re Leatherstocking Antiques, Inc.*, No. 12 CIV. 7758 ER, 2013 WL 5423995, at *5 (S.D.N.Y. Sept. 27, 2013).

[4] Even were this appeal not moot, the Court would affirm the Excusal Order on its merits based on the Bankruptcy Court's factual findings at the December 10, 2015 evidentiary hearing pertaining to Lynch's mismanagement of Harbor Drive. In light of those findings, which are free of clear error, the Bankruptcy Court did not abuse its discretion in excusing O'Brien's compliance with Sections 543(a) and (b) to protect the creditors' best interests.

Further, although Lynch claims in her reply brief that she is not seeking reversal of the State Court orders, and thus the *Rooker-Feldman* doctrine is inapplicable, her argument that the Bankruptcy Court improperly relied on the State Court orders in granting the Excusal Motion is without merit. (Lynch Reply Br. at 7-9.) First, to the extent that Lynch asserts that the State Court violated her Due Process rights during the Divorce Action, such a claim is not properly before the Court in this action, which is an appeal from a federal bankruptcy proceeding. Second, there is a long tradition of federal abstention in cases pertaining to family affairs based on, *inter alia*, "the strong state interest in domestic relations matters" and "the competence of state courts in settling family disputes." *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978) (collecting cases). In concert with this principle, this Court, like the Bankruptcy Court, refuses Lynch's invitation to impugn the integrity of the State Court proceedings.

13

control of the property).[5]

Further, although Frank may argue that awarding her damages in the amount of the difference between the Contract price and the Purchase Price—*i.e.*, $540,000—would not invalidate the sale of Harbor Drive and thus would not implicate the statutory mootness rule, *WestPoint* foreclosed that argument. In that case, the Second Circuit said that while it had previously noted that "it was unclear why 'an appellate court . . . . could not order some form of relief *other than invalidation of the sale*,'" 600 F.3d at 248 (quoting *Gucci I*, 105 F.3d at 840 n.1), it now held that Section 363(m) divests appellate courts of "jurisdiction to review the entire Sale Order—not just the actual sale transaction," *id*. In reaching this holding, the Court cited the Sixth Circuit's decision in *Parker*, 499 F.3d at 621, which observed that a "majority of our sister circuits construe § 363(m) as creating a *per se* rule automatically mooting appeals for failure to obtain a stay of the sale at issue." Similarly, the Second Circuit also cited approvingly the Eleventh Circuit's opinion in *The Charter Co.*, 829 F.2d at 1056, which rejected the appellant-purchaser's attempt "to obtain a refund of a portion of the sale price" because "[o]ne cannot challenge the validity of a central element of a purchase, the sale price, without challenging the validity of the sale itself." *See WestPoint*, 600 F.3d at 251; *see also id*. at 251 n.11 (holding that Section 363(m) also applies to the distribution of the proceeds from a bankruptcy sale); *MSR Resort*, 2014 WL 67364, at *9.

Likewise, this Court "fail[s] to see how [it] could order a [$540,000] refund to the purchaser without affecting the validity of the sale." *The Charter Co.*, 829 F.2d at 1056; *see also Parker*, 499 F.3d at 622 (holding that Section 363(m) precludes granting relief that would "materially modify" the value of the sale asset). Further, allowing Frank to devalue Harbor Drive by recouping from the bankruptcy estate the premium she paid above the Contract price would implicate the policy concerns that Congress addressed by enacting Section 363(m). *See WestPoint*, 600 F.3d at 248-49 (noting that opening a final sale to an appellate challenge would encourage "a purchaser [to] demand a discount for the purchase of assets in which the terms and conditions of the sale cannot be protected from challenge even after closing the sale"). As noted, statutory mootness safeguards "the uniquely important interest in assuring the finality of a sale that is completed pursuant to 11 U.S.C. § 363(b) or (c) in bankruptcy proceedings," *id*. at 248, and thus "consummation of a sale in bankruptcy greatly limits the ability of reviewing courts to fashion effective relief," *Parker*, 499 F.3d at 621.

Accordingly, because Section 363(m) applies to the Stay, Reconsideration, and Sale Orders—notwithstanding that Frank seeks damages in addition to reversal—and Frank did not obtain a stay of those orders pending appeal (although she unsuccessfully sought a stay in the Bankruptcy Court in conjunction with her motion for reconsideration and after issuance of the

---

[5] Moreover, the fact that Frank was the purchaser of Harbor Drive does not preclude operation of Section 363(m). *See In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987) ("[A]ppellant argues that the stay requirement does not apply to a purchaser who challenges the authorization. . . . There is nothing in the language of section 363(m) to suggest that such an exception exists."); *accord WestPoint*, 600 F.3d at 248-51.

Sale Order), this Court's jurisdiction is limited to reviewing for good faith. *See Motors Liquidation*, 428 B.R. at 53; *Am. Land Acquisition, Corp. v. Pergament*, No. 13 CV 4357 SJF, 2014 WL 904963, at *4 (E.D.N.Y. Mar. 6, 2014). As discussed above, the Bankruptcy Court did not err in finding that she purchased Harbor Drive in good faith, and of course, it would be absurd for Frank to now argue otherwise. Thus, the Court must dismiss the Frank Appeals as statutorily moot. *See, e.g.*, *MSR Resort*, 2014 WL 67364, at *10.[6]

## IV. CONCLUSION

For the foregoing reasons, these consolidated appeals are dismissed in their entirety as moot pursuant to Section 363(m) of the Bankruptcy Code. The Clerk of the Court shall close these cases.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2017
      Central Islip, New York

*\*\*\**

Maura E. Lynch is proceeding *pro se* and was previously represented in this consolidated action by Jay S. Hellman and Kenneth A. Reynolds of Silverman Acampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753.

Patricia M. Frank is represented by Fredrick Paul Stern of Fredrick P. Stern, P.C., 2163 Sunrise Highway, Islip, New York 11751.

Stephen Vaccaro is represented by Patrick Collins of Farrell Fritz, P.C., 1320 RXR Plaza, Uniondale, New York 11556.

Stephen L. O'Brien is represented by Marc A. Pergament of Weinberg, Gross & Pergament, LLP, 400 Garden City Plaza, Suite 403, Garden City, New York 11530.

---

[6] Based on the Bankruptcy Court's factual findings, which evince no evidence of clear error, and a *de novo* review of the applicable law, the Court would also affirm these orders on their merits.